UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

TORIO CLAY, JASON FERGUSON, and CARSTEN
VOGEL on Behalf of Themselves and Others Similarly
Situated,

                                Plaintiffs,

                             -against-

THE CITY OF NEW YORK, P.O. THOMAS AMATO,
SHIELD NO. 011654, Individually and in his Official
Capacity, P.O. JEFFREY GARRISON, SHIELD NO.
11615, Individually and in his Official Capacity,  P.O.
LEONARDO DEOLIVEIRA, Shield No. 3164, and P.O.
"JOHN DOE" #1-10 Individually and in their Official
Capacity (the name John Doe being fictitious as the true
names are unknown),

                             Defendants.

------------------------------------------------------------------X

**PROPOSED
CLASS ACTION
AMENDED COMPLAINT**

**JURY TRIAL DEMANDED**

**14 CV 9171 (RMB)(MHD)**

**ECF CASE**

      Plaintiffs Torio Clay, Jason Ferguson, and Carsten Vogel, on behalf of themselves and

others similarly situated, by their attorneys, Cohen & Fitch LLP, complaining of the defendants,

respectfully alleges as follows:

## PRELIMINARY STATEMENT

      1.     Plaintiffs bring this action on behalf of themselves and others similarly situated

seeking compensatory damages, injunctive relief, and attorney's fees pursuant to 42 U.S.C. §

1983 and 42 U.S.C. § 1988 for violations of their civil rights, as said rights are secured by said

statutes and the Constitutions of the State of New York and the United States.

      2.     Under a pattern and practice set and enforced by city officials, the New York City

Police Department ("NYPD") and its officers, including P.O. THOMAS AMATO, SHIELD NO.

011654, P.O. JEFFREY GARRISON, SHIELD NO. 11615, P.O. LEONARDO DEOLIVEIRA,

SHIELD NO. 3164, and P.O. "JOHN DOE"'s #1-10, are unconstitutionally and illegally enforcing the provisions of Section 265.01(1) of the New York Penal Law ("NYPL") against individuals who are in legal and lawful possession of certain types of knives and/or blades that are not prohibited by any Federal or State law.

3.     Specifically plaintiffs and others similarly situated are being stopped, seized, arrested, imprisoned, and prosecuted for possession of "gravity knives" under NYPL 265.01(1) when in fact the knives in their possession are unequivocally not - by definition, common usage and function - "gravity knives," or otherwise illegal under the statute.

4.     This policy, pattern and practice is born from the NYPD's deliberate indifference to training, educating and properly familiarizing officers – both superior and subordinate – as to the appearance, look, function, and use of illegal "gravity knives" versus legal knives whose possession and use are not prohibited under New York State Law.

5.     Further, despite being on notice from numerous court decisions, abandoned prosecutions, and an overabundance of everyday common sense and practical knowledge readily known and/or obtainable, NYPD officers continue to promulgate these baseless arrests and prosecutions because the department has utterly failed – and continues to fail in every respect – to train these officers as to which knives are actually "gravity knives" and thus illegal and which knives are undoubtedly legal.

6.     The effect of this practice has literally caused *thousands* of unconstitutional arrests and prosecutions and has subjected the plaintiff's herein to handcuffing, detention, incarceration, prosecutions with tens of thousands of court appearances, and potential criminal liability, in violation of their fundamental rights under the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

7.    Further, not only are defendants deliberately indifferent to the distinctions between illegal gravity knives and legal knives, they have also engaged in the practice of selectively prosecuting and/or enforcing this statute albeit unconstitutionally *only* against the *purchasers* of these legal knives while leaving businesses and/or corporate retailers free from false arrest and prosecution. This practice is unlawful, without proper of legal motive, and impermissible under the Fifth and Fourteenth Amendments of the Constitution.

**New York Penal Law Section 265.01(1) - The Relevant Statute**

8.    The plaintiff's herein, and thousands of others similarly situated, have been falsely arrested, imprisoned, and prosecuted for violating NYPL Section 265.01(1) - specifically for allegedly possessing "gravity knives" - when in fact the items in their possession were unmistakably not gravity knifes under the statute.

9.    The relevant portion of  NYPL § 265.01(1) provides:

> A person is guilty of criminal possession of a weapon in the fourth degree when:
>
> (1) He or she possesses any firearm, electronic dart  gun,  electronic stun gun, *gravity knife*, switchblade knife, pilum ballistic knife, metal knuckle knife, cane sword, billy, blackjack, bludgeon, plastic knuckles, metal  knuckles,  chuka stick,  sand bag,  sandclub,  wrist-brace type slingshot or slungshot, shirken or "Kung Fu star";[1]

**New York Penal Law Section 265.00(5) - The Definition of a Gravity Knife**

10.    The basis of the false arrests and prosecutions of the putative plaintiff class stems from a fundamental ignorance - or deliberate disregard – of the appearance, mechanics, and function of knives prohibited by New York Law under the classification of "gravity knives."

11.    The relevant portion of NYPL § 265.00(5) provides:

---

[1]   The putative plaintiff class does not challenge the legitimacy of any arrests under NYPL 265.01(1) that allege possession of anything other than a gravity knife (i.e. any firearm, electronic dart gun, electronic stun gun...switchblade knife, pilum ballistic knife, metal knuckle knife, cane sword, billy, blackjack, bludgeon, plastic knuckles, metal knuckles, chuka stick, sand bag, sandclub, wrist-brace type slingshot or slungshot, shirken or "Kung Fu star.").

As used in this article and in article four hundred, the following terms shall mean and include:

5. "Gravity knife" means any knife which has a blade which *is*[2] released from the handle or sheath thereof *by*[3] the force of gravity or the application of centrifugal force which, when released, is locked in place by means of a button, spring, lever or other device.

12.     As defined by the penal law, to be properly and legally classified as a gravity knife, the knife in question must posses one crucial characteristic - namely, that either gravity or centrifugal force *must* be the *intended* mechanism, instrumentality, or agency by which the blade releases from the handle.

13.     By contrast, nowhere in the statute is a gravity knife defined as any knife which merely has the *capability* of being opened by the application of centrifugal force. This is the crucial definitional characteristic that distinguishes an illegal gravity knife from those knives that may – with certain expertise, special coordination, or force – have the faculty to open by such means but are not intended or designed for such use.

14.      Despite this clear and unambiguous definition, for years the NYPD has either deliberately disregarded or remained deliberately indifferent to training its officers on how to properly distinguish illegal "gravity knives" from legally purchased knives/tools, which are not by definition, design or function, "gravity knives." This practice of deliberate indifference has perpetuated tens of thousands of false arrests, detentions, and prosecutions, for possession of instruments alleged to be gravity knives, which in reality are not  gravity knives and are therefore not illegal in any respect.

---

[2] "Is" as used in this article is the present singular of the intransitive verb "be," which refers to the "specific qualification" of an object. *MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th Ed. 2014)*
[3] "By" as used in this article is defined as "through the agency or instrumentality of." Id.

**The Common Folding Knife or Slip Joint Knife - Unmistakably NOT a Gravity Knife**

15.     The plague of false arrests and prosecutions for alleged gravity knives stems from the NYPD's fundamental lack of awareness and training - or deliberate disregard - of the obvious and fundamental difference between an actual gravity knife and a Slip Joint knife (the category of all utility knives used in construction and hardware), which are fundamentally NOT gravity knives.

16.     Slip Joint knives were invented in the 1600's; they utilized a bar spring that applied pressure against the blade near the pivot point or fulcrum. In this type of knife design, the force and pressure of the internal bar spring was sufficient to hold the knife open and a certain amount of force exertion was required to close the knife blade back into the handle after it was open.

17.      Similarly, when the blade was in the closed position, opening the blade from the handle required a certain amount of pull force/exertion to overcome the pressure of the bar spring that held the blade closed. For this reason, two hands were required to open and close the Slip Joint knife. The most common and obvious examples of a Slip Joint knives are the Swiss Army Knife or Camper knife utilized by most Boy Scouts throughout the country.

**The Practical Definition and Common Understanding of a Gravity Knife Contemplated By the New York State Legislature**

18.     A "gravity knife" or "inertia knife" is a knife designed specifically to be opened by gravity or the force of inertia. A gravity knife – in contrast to many other common utility knives which have a bias towards closure – has no spring and no bias towards closure.

19.     As a result, the weight of the blade itself is the opening mechanism such that gravity or centrifugal force will cause the blade to move into the open position. Then, the blade

must be locked into the open position, or else it would slide back into the handle as soon as any force was applied (e.g., during cutting or thrusting).

20.     Gravity knifes are designed in two forms:

(1) where the blade moves into position through the top of the handle such that when the top of the handle is faced downward, the force of gravity will - by itself - cause the blade to release or fall out of the handle into the locked position (hereinafter "Category I gravity knife"); or,

(2) where the blade moves into position out of the side of the handle such that when a person provides a *slight* amount of centrifugal or rotational force to the handle, the blade will slide out of the handle on the side, rotate on the fulcrum or hinge and lock into place at the top of the handle (hereinafter "Category II gravity knife").

21.     Originally, the earliest models of gravity knives were designed for military use. One of the most recognizable gravity knives is the World War II Luftwaffe Fallschirmjäger-Messer or German air force paratrooper knife. This was a Category I gravity knife and was issued to German paratroopers for the purpose of cutting a trapped parachutist from his rigging in case he landed with a tangled parachute and as a close combat weapon when necessary.

22.      From this original design came the origin of Category II gravity knives, opening from the side with only the slightest flick of the wrist. Their design and purpose was to enable the user to release the blade with one hand and minimal effort, to facilitate rapid defense in hand to hand combat.

23.    Neither design was intended for two hand operation (i.e. the necessity of both hands to deploy the blade) or to have any resistance against opening (i.e. bias) when in an unlocked position. This lack of bias facilitated speedy deployment of the blade.

24.    It was with knowledge of these *particular* knives in mind, and their propensity for violent use given the ease and speed in which the blade could be deployed, that the New York State legislature in 1958 moved to amend the Penal Law 265.01(1) to add the "gravity knife" to the list of prohibited weapons.

25.    Specifically, one of the committee chairmen even commented during his discussion on the amendment to the Penal Law that such an amendment was necessary because of the knife's capacity to mirror the already illegal switchblade knife with a design that allowed the blade to "leap out with the flip of a wrist." Emma Harrison, *Group Seeks Ban of Gravity Knife*, N.Y. TIMES, Dec. 19, 1957.

**Bias Toward Closure – The Quintessential Difference Between a Legal knife and an Illegal Gravity Knife**

26.    Unlike the design of a gravity knife, all Slip Joint Knifes share one common characteristic: they all have *a bias toward closure* and *require* pull force/exertion to deploy the blade from the handle of the knife.

27.    A bias toward closure is the pressure holding the knife blade in the closed position. In its simplest terms, a bias towards closure is best exemplified by the typical kickstand of a bicycle. Specifically, unless some level of force is used to overcome the bias toward closure the kick stand will remain "closed." Conversely, without the bias toward closure, a kickstand would be deployed by any slight bump or *even by gravity alone* and drag along the street while the bicycle was being ridden.

28.    The antithesis example of a bias toward closure is the switchblade knife, which uses a spring mechanism that is always deployed, which pushes the blade into the open position. The simple idea is that the knife would always remain open *but for* the device holding it back from constantly ejecting out of the handle (this is referred to as an, "open bias.").

29.    Unlike the Slip Joint knife and the Switchblade knife, a true gravity knife has no bias whatsoever as part of its design. This means that without a lock for the blade itself, there is no mechanism whatsoever to hold the blade in either the open or closed position.

30.    An everyday example of a knife with no bias is an Old Fashioned Straight Razor, commonly used for shaving at a barber shop. This knife has no bias whatsoever and can be opened with no effort at all by slight "flick of the wrist." In fact, but for the fact that an Old Fashioned Straight Razor has no locking mechanism to keep the blade open when it is deployed, it would squarely fit into the definition of a "gravity knife" under NYPL 265.00(5).

31.    Consequently, a gravity knife *must* have both a mechanism to lock the blade in the open position when it is deployed and a lock to keep the blade in the closed position when it is closed. This keeps the blade from opening and closing inadvertently when the user does not intend so.

32.    While some slip joint knives also have a similar locking feature, the quintessential difference between the closed locking mechanism of a legal Slip Joint Knife and an illegal gravity knife is that the lock is not the *sole* means of keeping the blade from opening. In fact in Slip Joint Knives, this closed locking mechanism is a safety feature that merely enables the handler to release the blade, *but it is the bias toward closure* that prevents the Slip Joint Knife blade from being deployed without the necessary pull force/exertion to otherwise release the blade from the handle.

33.    By contrast, any closed locking feature of a gravity knife is the *only* means of keeping the knife closed, which is why it can open merely with a slight "flick of the wrist" and no actual exertion or effort at all to release the blade. Once again, it is this bias toward closure versus no bias whatsoever that separates each and every gravity knife from those legal and lawful Slip Joint knives.[4]

**The _Mere Capability_ to Open a Knife with an Amount of Centrifugal Force Does Not Transform a Legal Slip Joint Knife into and Illegal Gravity Knife**

34.    Despite the fact that by design, bias, and mechanics, Slip Joint or Folding Utility knives are not intended or readily capable of being opened through the use of centrifugal force, these knives may – by certain individuals possessing the know-how, skill, practice, coordination, and force – be capable of deploying by centrifugal force; however, because this was not the intent or design of these knives, they are not, by definition, gravity knives, which differentiates them from the specific design and purpose of an actual gravity knife.

35.    Consequently, the mere fact that through skill, practice, or significant force or exertion, the blade may be deployed by centrifugal force does not transform these otherwise legal knives into illegal "gravity knives" prohibited under NYPL 265.01(1).

36.    If the legislature had intended NYPL 256.01(1) to cover such legal utility Slip Joint Knives, it is clear that the statute would have expanded the prohibition to any knife that has a blade which "*may* be released," "*is capable* of being released," or "*can* be released," by centrifugal force; and not instead specifically enumerate the precise criteria that separates a

---

[4]  In a corollary Federal Statute, 15 U.S.C. §§ 1241-1245 the United States Government has clearly recognized the distinguishing characteristic between Slip Knives and Gravity Knives in exempting the former specifically because of the bias toward closure. See 15 U.S.C. § 1244(5) ("this title shall not apply to -  a knife that contains a spring, detent, or other mechanism designed to create a bias toward closure of the blade and that requires exertion applied to the blade by hand, wrist, or arm to overcome the bias toward closure to assist in opening the knife.")

gravity knife from every other legal knife in existence – namely, a one with a blade "which *is* released *by* the force of gravity or application of centrifugal force."

37.     Thus, it is clear that the legislature was referring *only* to those knives that are – by design *and* intent – opened *specifically* through gravity or the use of centrifugal force and not such everyday common utility knifes, which may, with certain unique skill, strength, and force, be deployed through the use of centrifugal force even through it was never their intent or design.

**The NYPD's Deliberate Disregard or Indifference to the Distinction between Legal Knives and Illegal Gravity Knives**

38.     Between 2006 and 2008, the numbers of NYPL 265.01(1) arrests  has increased exponentially by several thousand every year and has stayed consistently at approximately 7,000 arrests per year from 2009 through the present.

39.     Upon information and belief the majority of the arrests under this charge are specifically related to alleged gravity knife possession.

40.     Moreover, the drastic increase in this particular offense - specifically for possession of alleged gravity knives - has been a direct result of the increasing usage and sale of common utility folding knives, slip joint knives and the NYPD's deliberate ignorance and/or indifference to the distinction between these knives and actual gravity knives that are prohibited by statute.

41.     These false arrests are made with deliberate disregard or indifference regarding the legality of the knives allegedly being possessed and without any appropriate testing, or examination to determine same.

42.     Due to the NYPD's utter failure to train its officers as to the distinct difference between legal and illegal knives, and/or the NYPD's explicit/implicit indifference or disregard to

the  distinction between legal knives and illegal gravity knives, thousands of innocent individuals have been falsely arrested and prosecuted.

43.    As a result of this policy pattern and practice of deliberate indifference to training and proper differentiation between legal knives and illegal gravity knives, tens of thousands of individuals have been stopped, searched, arrested and prosecuted in violation of their rights as secured by the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

**The NYPD's Unconstitutional Selective Prosecution of the Putative Class in this Matter in Violation of the Constitution**

44.    In addition to the NYPD's utter disregard for the distinction between legal knives that are lawful to possess and illegal gravity knives, the NYPD has selectively enforced this unconstitutional policy with no conceivable legitimate purpose under the law.

45.    As previously stated, the NYPD's policy, pattern and practice and/or deliberate indifference to training, has caused tens of thousands of individuals - including the plaintiffs herein – to be falsely arrested and prosecuted for possession of perfectly legal and lawful knives under the guise that they are "gravity knives" in violation of NYPL 265.01(1) & 265.00(5).

46.    Notwithstanding that the putative class is being falsely arrested for possessing items that are not prohibited by law, the NYPD only carries out this unlawful practice out against innocent, and unwitting purchasers of these LEGAL knives yet fails to ever - not one single time - arrest, prosecute or otherwise infringe on the constitutional rights of any of the business or corporate retailers of these LEGAL knives.

47.    In fact, upon information and belief, in the last ten years the NYPD has never made one single arrest of any retailer possessing, selling or distributing these LEGAL knives, but

rather has carried out these false arrests and prosecutions selectively solely against innocent and unwitting purchasers and possessors of these LEGAL folding knives.\

48.     This is telling of the illegitimacy of the NYPD's policy at the outset, given that under the NYPD's ignorant understanding, these entities would most certainly have been - and would continue to be in - violation of the exact same laws for which thousands of New Yorkers are being falsely arrested and prosecuted.

49.     Specifically, these LEGAL knives have been and continue to be possesed and sold for decades throughout New York City by numerous retailers, yet have somehow these individuals have never been arrested or prosecuted over the past three (3) decades for violating the very laws which have been used as a vehicle of harassment against thousands of law abiding purchasers.

50.     Obviously, no person or business should *ever* be subject to arrest or prosecution for any of these utility knives because they are entirely legal and not gravity knives, however the distinction between the treatment of innocent and unwitting purchasers of these items (who are falsely arrested or prosecuted,) and corporate and commercial retailers (who are not arrested and prosecuted at all) serves no legitimate or lawful purpose and constitutes a violation of the rights of the putative class as secured by the Fourteenth Amendment to the United States Constitution.

51.     While it is perfectly legal to sell AND possess these folding knives as they are not prohibited by law, there is absolutely no constitutional basis to falsely arrest and prosecute the lawful purchasers of these knives in such a disparate manner to those who sell the very same items to the public.

52.     The fact that the NYPD deliberately acknowledges their legality when it comes to the retailers, businesses and corporate entities - who are entitled to and clearly still do possess,

sell and distribute these LEGAL knives - when it refrains from arresting and prosecuting these entities constitutes a violation of the Fifth and Fourteenth Amendments to the Constitution.[5]

53.     This is direct evidence that the NYPD is entirely aware that these knives are legal and lawful to possess and sell but deliberately ignores this fact once the item leaves the store and comes into the possession of the putative plaintiffs.

54.     Accordingly, for members of the NYPD to selectively falsely arrest and prosecute individuals for possessing LEGAL knives against only purchasers is direct evidence of the NYPD's improper motive and continuing violation of the Constitutional rights of the putitive class  under the Fifth and Fourteenth Amendment.

## JURISDICTION

55.     This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988, and the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution.

56.     Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1343(a) and 1367.

## VENUE

57.     Venue is properly laid in the Southern District of New York under U.S.C. § 1391(b), in that this is the District in which a substantial part of the events or omissions giving rise to the claim occurred.

## JURY DEMAND

58.     Plaintiffs respectfully demand a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

---

[5]  In fact, the only even feigning effort to show some level of equality in the enforcement of the gravity knife statute was the New York County District Attorney's Office extortion of several large retailers of these LEGAL knives in 2011, which *even then* never resulted in any prosecution. Specifically, in 2010, the Manhattan District Attorney's Office collected a payoff of approximately1.9 million dollars from Home Depot, Eastern Mountain Sports, Paragon and other large retailers for their sale of illegal and legal knives.

## FACTS

59.     Plaintiff TORIO CLAY is a thirty-six (36) year old African American male and at all relevant times a resident of the City and State of New York.

60.     Plaintiff JASON FERGUSON is a twenty-seven (27) year old African American male and at all relevant times a resident of the City and State of New York.

61.     Plaintiff CARSTEN VOGEL is a thirty-seven (37) year old Caucasian male and at all relevant times a resident of the City and State of New York.

62.     At all times hereinafter mentioned, the individually named defendants, P.O. THOMAS AMATO, SHIELD NO. 011654, P.O. JEFFREY GARRISON, SHIELD NO. 11615, P.O. LEONARDO DEOLIVEIRA, SHIELD NO. 3164, and P.O. "JOHN DOE"'s #1-10, were duly sworn NYPD officers of said department and were acting under the supervision of said department and according to their official duties.

63.     At all times hereinafter mentioned, the defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York. Each and all of the acts of the defendants alleged herein were done by said defendants while acting within the scope of their employment by defendant, CITY OF NEW YORK.

64.     Each and all of the acts of the defendants alleged herein were done by said defendants while acting in furtherance of their employment by defendant, CITY OF NEW YORK.

65.     Defendant CITY OF NEW YORK was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

66.     Defendant CITY OF NEW YORK maintains the NYPD, a duly authorized public

authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the New York State Criminal Procedure Law, acting under the direction and supervision of the aforementioned municipal corporation, City of New York, who was responsible for the policy, practice, supervision, implementation and conduct of all NYPD matters and was responsible for the appointment, training, supervision, and conduct of all NYPD personnel, including the defendants referenced herein. In addition, at all relevant times, Defendant City was responsible for enforcing the rules of the NYPD, and for ensuring that NYPD personnel obey the laws of the United States and of the State of New York.

67.    That at all times hereinafter mentioned the defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York and/or New York, Bronx, Kings, Queens and Richmond Counties.

68.    During all times mentioned in this complaint, the defendants and each of them separately and in concert, engaged in acts and/or omissions which constituted deprivations of plaintiffs' constitutional rights, equal protections and the privileges and immunities of the plaintiffs, and while these acts were carried out under color of law, they had no justification or excuse, and were instead illegal, improper, and unrelated to any activity in which state officers may appropriately and legally engage in the course of protecting persons and/or ensuring civil order.

***The Constitutional Violations against Torio Clay***

69.    At all relevant times mentioned herein plaintiff TORIO CLAY was and is employed by the New York City Department of Education as a maintenance worker and by Icon Charter School as custodian.

70.    At all relevant times mentioned herein, plaintiff CLAY, possessed a legal utility knife which he used in connection with his employment as a maintenance worker and custodian.

71.    At all relevant times mentioned herein, plaintiff CLAY has always possessed his utility knife in compliance with all applicable laws, and was and is legally entitled to posses the utility knife in the places where the incidents giving rise to this lawsuit took place.

72.    On or about November 21, 2011, at approximately 3:30 p.m., plaintiff CLAY was lawfully present in the vicinity of 169th Street and Boston Road, in the Bronx, New York.

73.    Plaintiff CLAY was on his way to his second job when the above captioned NYPD Police Officers arrested plaintiff CLAY without probable cause to do so.

74.    The NYPD officers stopped plaintiff CLAY and immediately began to search him for no apparent reason, finding a legal utility knife, to wit, a box cutter which plaintiff CLAY was legally entitled to possess for work.

75.    Despite the fact that plaintiff CLAY explained to the NYPD officers that the knife was legal and that he uses it for his job as a Senior School Lunch Helper with the NYC Department of Education and as a custodian with Icon Charter school, the officers detained him on unknown charges for approximately twelve (12) hours until they released him with a Desk Appearance ticket charging him with Criminal Possession of a Weapon in the 4th Degree pursuant to New York Penal Law §265.01(1).

76.    Subsequently, plaintiff CLAY made approximately five (5) court appearances until all charges against him were Adjourned in Contemplation of Dismissal on December 5, 2012.

77.    As a result of his arrest, plaintiff CLAY was suspended without pay from his job and sustained, inter alia, mental anguish, shock, fright, apprehension, embarrassment,

humiliation, and deprivation of his constitutional rights.

78.     Plaintiff CLAY and others similarly situated possessing legal utility knives were and continue to be falsely arrested, charged  and selectively prosecuted for violating sections of the New York Penal Law that do not apply to the legal knives that they possess at the time of their arrest.

79.     At no time during the relevant statutory period was plaintiff CLAY ever in violation of New York Penal Law Section 265.01(1) because under the law it is legally impossible for persons who possesses a legal utility knife to violate this law, given that the knife in question does not meet the statutory definition of a gravity knife under New York Penal Law Section 265.00(5).

80.     At no time during the relevant statutory period was plaintiff CLAY ever in violation of any of the proscriptions of New York Penal Law Section 265.01(1), the applicable law governing the possession of illegal gravity knives.

81.     At no time during the relevant statutory period did plaintiff CLAY commit any crime or violation of law to justify his arrest, seizure, detention, the issuance of the aforementioned Desk Appearance Ticket, or prosecution.

82.     Upon information and belief, the false arrests, seizures, false Desk Appearance Tickets, and prosecutions, are only being directed at those individuals who are in possession of legal utility knives, with malice, at the expense of the legal rights of individuals, while retail and corporate entities remain unaffected.

83.     As a result of the actions and policy promulgated by defendants plaintiff has suffered injuries of a constitutional dimension, including but not limited to, existing and continuing violations of his civil and constitutional rights under the Fourth, Fifth and Fourteenth

Amendments to the Constitution.

### *The Constitutional Violation Against Jason Ferguson*

84.     At all relevant times mentioned herein plaintiff JASON FERGUSON was and is employed as a certified electrician for J&F Electronic Company and as a freelance electrician for other contractors.

85.     At all relevant times mentioned herein, plaintiff FERGUSON, possessed a legal utility knife which he used in connection with his employment as an electrician.

86.     At all relevant times mentioned herein, plaintiff FERGUSON has always possessed his utility knife in compliance with all applicable laws, and was and is legally entitled to posses the utility knife in the places where the incidents giving rise to this lawsuit took place.

87.     On or about August 16, 2013, at approximately 4:30 p.m., plaintiff FERGUSON was lawfully present in the vicinity of Jamaica Avenue and Parsons Blvd., in Queens, New York.

88.     Plaintiff FERGUSON was on his way to his second job with J&F Electronic Company when the above captioned NYPD Police Officers arrested plaintiff FERGUSON without probable cause to do so.

89.     The NYPD officers stopped plaintiff FERGUSON and immediately began to search him for no apparent reason, finding a utility knife which plaintiff FERGUSON was legally entitled to possess for work.

90.     Despite the fact that plaintiff FERGUSON explained to the NYPD officers that he uses the utility knife for his job as an electrician, the officers detained him on unknown charges for approximately one and a half (1.5) days until he was released following arraignment having been charged with Criminal Possession of a Weapon in the 4th Degree, pursuant to New York Penal Law § 256.01(1).

91.     Subsequently, plaintiff FERGUSON made approximately two (2) court appearances until all charges against him were Adjourned in Contemplation of Dismissal on November 26, 2013.

92.     As a result of his arrest, plaintiff FERGUSON missed five (5) days of work and sustained, inter alia, mental anguish, shock, fright, apprehension, embarrassment, humiliation, and deprivation of his constitutional rights.

93.     Plaintiff FERGUSON and others similarly situated possessing legal utility knives were and continue to be falsely arrested, charged  and selectively prosecuted for violating sections of the New York Penal Law that do not apply to the legal knives that they possessed at the time of their arrest.

94.     At no time during the relevant statutory period was plaintiff FERGUSON ever in violation of New York Penal Law Section 265.01(1) because under the law it is legally impossible for persons who possess legal utility knives to violate this law, given that the knife in question does not meet the statutory definition of a gravity knife under New York Penal Law Section 265.00(5).

95.     At no time during the relevant statutory period was plaintiff FERGUSON ever in violation of any of the proscriptions of New York Penal Law Section 265.01(1), the applicable law governing the possession of illegal gravity knives.

96.     At no time during the relevant statutory period did plaintiff FERGUSON commit any crime or violation of law to justify his arrest, seizure, detention, or prosecution.

97.      Upon information and belief, the false arrests, seizures, and prosecutions are only being directed at those individuals who are in possession of legal utility knives, with malice, at the expense of the legal rights of individuals, while retail and corporate entities remain

unaffected.

98.    As a result of the actions and policy promulgated by defendants plaintiff FERGUSON has suffered injuries of a constitutional dimension, including but not limited to, existing and continuing violations of his civil and constitutional rights under the Fourth, Fifth and Fourteenth Amendments to the Constitution.

### *The Constitutional Violations against Carsten Vogel*

99.    At all relevant times mentioned herein, plaintiff VOGEL, possessed a legal utility knife which he used in connection with his employment as a self employed musician. Specifically, plaintiff VOGEL uses said legal knife to set up public announcement (hereinafter "PA") equipment, which requires him to cut tape and cables.

100.    At all relevant times mentioned herein, plaintiff VOGEL has always possessed his utility knife in compliance with all applicable laws, and was and is legally entitled to posses the utility knife in the places where the incidents giving rise to this lawsuit took place.

101.    On or about January 20, 2015 at approximately 4:58 p.m., plaintiff VOGEL was lawfully present in the vicinity of Nostrand Avenue and Fulton Street, in Brooklyn, New York.

102.    Plaintiff VOGEL was waiting for the A train at the Nostrand Avenue Station on his way to work, when the above captioned NYPD Police Officers arrested plaintiff VOGEL without probable cause to do so.

103.    The NYPD officers stopped plaintiff VOGEL and immediately began to search him for no apparent reason, finding a utility knife which plaintiff VOGEL was legally entitled to possess for work.

104.    Despite the fact that plaintiff VOGEL explained to the NYPD officers that he uses the utility knife for his job as a self employed musician – for the purpose of cutting tape and

cables while setting up public announcement PA equipment – the officers detained him on unknown charges for several hours, until he was released with a Desk Appearance Ticket charging him with Criminal Possession of a Weapon in the 4th Degree, pursuant to New York Penal Law § 256.01(1).

105.    Subsequently, plaintiff VOGEL made approximately one (1) court appearance until all charges against him were Adjourned in Contemplation of Dismissal on March 11, 2015.

106.    As a result of his arrest, plaintiff VOGEL sustained, inter alia, mental anguish, shock, fright, apprehension, embarrassment, humiliation, and deprivation of his constitutional rights.

107.    Plaintiff VOGEL and others similarly situated possessing legal utility knives were and continue to be falsely arrested, charged  and selectively prosecuted for violating sections of the New York Penal Law that do not apply to the legal knives that they possessed at the time of their arrest.

108.    At no time during the relevant statutory period was plaintiff VOGEL ever in violation of New York Penal Law Section 265.01(1) because under the law it is legally impossible for persons who possess legal utility knives to violate this law, given that the knife in question does not meet the statutory definition of a gravity knife under New York Penal Law Section 265.00(5).

109.    At no time during the relevant statutory period was plaintiff VOGEL ever in violation of any of the proscriptions of New York Penal Law Section 265.01(1), the applicable law governing the possession of illegal gravity knives.

110.    At no time during the relevant statutory period did plaintiff VOGEL commit any crime or violation of law to justify his arrest, seizure, detention, or prosecution.

111.    Upon information and belief, the false arrests, seizures, and prosecutions are only being directed at those individuals who are in possession of legal utility knives, with malice, at the expense of the legal rights of individuals, while retail and corporate entities remain unaffected.

112.    As a result of the actions and policy promulgated by defendants plaintiff VOGEL has suffered injuries of a constitutional dimension, including but not limited to, existing and continuing violations of his civil and constitutional rights under the Fourth, Fifth and Fourteenth Amendments to the Constitution.

### FIRST CLAIM FOR RELIEF FOR DEPRIVATION OF FEDERAL RIGHTS UNDER 42 U.S.C. § 1983

113.    Plaintiffs repeat, reiterate and re-allege each and every allegation contained in the proceeding paragraphs with the same force and effect as if fully set forth herein.

114.    All of the aforementioned acts of defendants, their agents, servants and employees, were carried out under the color of state law.

115.    All of the aforementioned acts deprived plaintiffs of the rights, equal protections, privileges and immunities guaranteed to citizens of the United States by the First, Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

116.    The acts complained of were carried out by the aforementioned individual defendants in their capacities as NYPD officers, with all of the actual and/or apparent authority attendant thereto.

106.    The acts complained of were carried out by the aforementioned individual defendants in their capacities as NYPD officers, pursuant to the customs, usages, practices,

procedures, and the rules of the City of New York and the New York City Police Department, all under the supervision of ranking officers of said department.

107.    Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States.

**SECOND CLAIM FOR RELIEF**
**FALSE ARREST UNDER 42 U.S.C. § 1983**

108.    Plaintiffs repeat, reiterate and re-allege each and every allegation contained in the proceeding paragraphs with the same force and effect as if fully set forth herein.

109.    As a result of defendants' aforementioned conduct, plaintiffs were subjected to an illegal, improper, and false arrests in the form of custodial arrests and detentions and/or the issuance of Desk Appearance Tickets by the defendants, and prosecuted by the defendants in criminal proceedings, without any probable cause, privilege, consent or any legitimate basis under the law.

110.    As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiffs sustained the damages hereinbefore alleges.

111.    As a result of the foregoing, plaintiffs' liberty was restricted for an extended period of time, and they were put in fear for their safety, were humiliated and subjected to handcuffing, and other physical restraints, without probable cause.

**THIRD CLAIM FOR RELIEF VIOLATION OF**
**SELECTIVE ENFORCEMENT/PROSECUTION UNDER 42 U.S.C. § 1983**

112.    Plaintiffs repeat, reiterate and re-allege each and every allegation contained in the proceeding paragraphs with the same force and effect as if fully set forth herein.

113.    As a result of defendants' aforementioned conduct, plaintiffs were subjected to selective prosecution based on their status as individuals because the City has the maliciously

and with improper motive attempted to prosecute these individuals while leaving retail and corporate interests free from arrest and prosecution.

114.    The conduct of the City and NYPD officers including P.O. THOMAS AMATO, SHIELD NO. 011654, P.O. JEFFREY GARRISON, SHIELD NO. 11615, P.O. LEONARDO DEOLIVEIRA, Shield No. 3164 and P.O. "JOHN DOE"'s #1-10 has been a pattern of harassment and intimidation against individuals for possessing knives which they are legally entitled to possess.

115.    As such it is inexplicable and without any possible legal or lawful justification that the NYPD is selectively arresting and prosecuting the putative plaintiffs - which are illegal in the first instance due to the legality of the knives - while foregoing the false arrest and prosecution of the very retailers and corporations who possess and sell these LEGAL knives.

116.    Other similarly situated retail and corporate vendors of the aforementioned knives have not been impacted or targeted in this campaign of harassment, intimidation and selective enforcement of the New York Penal Law, in violation of the rights of individuals as secured by the Fifth and Fourteenth Amendments to the Constitution.

117.    As a result of the foregoing, plaintiffs' liberty was restricted for an extended period of time, and they were put in fear for their safety, were humiliated and subjected to handcuffing, and other physical restraints, without probable cause.

**FOURTH CLAIM FOR RELIEF**
**MALICIOUS PROSECUTION UNDER 42 U.S.C. § 1983**

118.    Plaintiffs repeat, reiterate and re-allege each and every allegation contained in the proceeding paragraphs with the same force and effect as if fully set forth herein.

119.    Defendants have maliciously and with improper motive prosecuted the plaintiffs' in this matter for violations of the New York Penal Law that either never occurred or are entirely inapplicable to the legal knives that plaintiffs' possessed at the time of their respective arrests.

120.    Defendants were directly and actively involved in the initiation of criminal proceedings against plaintiffs.

121.    Defendants knew that they lacked probable cause to initiate criminal proceedings and prosecute plaintiffs for the violations of the New York Penal Law cited in the criminal complaints which formed the basis of the prosecutions of plaintiffs.

122.    Defendants acted with malice in initiating criminal and civil proceedings against plaintiffs.

123.    Defendants were directly and actively involved in the continuation of criminal proceedings against plaintiffs in that they submitted false information to the New York, Kings, Queens, Bronx , and Richmond County District Attorneys' Offices so that the plaintiffs would be prosecuted and caused their officers to give misleading information in connection with these arrests.

124.    Probable cause was lacking to continue the proceedings against plaintiffs.

125.    Defendants acted with malice in continuing criminal proceedings against plaintiffs.

126.    Defendants misrepresented and falsified evidence throughout all phases of the criminal proceedings in connection with these arrests.

127.    Notwithstanding the perjurious, fraudulent and unconstitutional conduct of defendants, theses arrests have all been terminated in plaintiffs' favor and the charges against them have been dismissed over the course of the statutory period.

128.    As a result of the foregoing, plaintiffs' liberty was restricted for an extended period of time, they were put in fear for their safety, and were humiliated and subjected to handcuffing and other physical restraints without probable cause.

**FIFTH CLAIM FOR RELIEF FOR**
**MUNICIPAL LIABILITY UNDER 42 U.S.C. § 1983**

129.    Plaintiffs repeat, reiterate and re-allege each and every allegation contained in the proceeding paragraphs with the same force and effect as if fully set forth herein.

130.    Defendants caused plaintiffs to be arrested in the absence of any evidence of criminal wrongdoing, notwithstanding their knowledge that said arrests were not based on probable cause or any legitimate basis under the law in violation of the constitutional rights of plaintiffs.

131.    Defendants caused plaintiffs to be arrested in the absence of any evidence of criminal wrongdoing, notwithstanding their knowledge that said arrests were not based on probable cause or any legitimate basis under the law and knowing that plaintiffs would be required to appear in court to be prosecuted under the aforementioned unconstitutional arrests in violation of the constitutional rights of plaintiffs.

132.    The acts complained of were carried out by the aforementioned individual defendants and subordinate officers of the NYPD officers, including P.O. THOMAS AMATO, SHIELD NO. 011654, P.O. JEFFREY GARRISON, SHIELD NO. 11615, P.O. LEONARDO DEOLIVEIRA, Shield No. 3164 and P.O. "JOHN DOE"'s #1-10 in their capacities as NYPD officers and officials, with all the actual and/or apparent authority attendant thereto.

133.    The acts complained of were carried out by the aforementioned individual defendants and subordinate NYPD officers, including P.O. THOMAS AMATO, SHIELD NO. 011654, Individually and in his Official Capacity, P.O. JEFFREY GARRISON, SHIELD NO.

11615, P.O. LEONARDO DEOLIVEIRA, Shield No. 3164 and P.O. "JOHN DOE"'s #1-10 in their capacities as NYDPR officers and officials pursuant to the customs, policies, usages, practices, procedures, and rules of the City of New York and NYPD, all under the supervision of other ranking officers of said departments.

134.    The pattern of unconstitutional arrests established by policy-making officials within the NYPD and the City of New York, the failure to train officers and employees regarding the distinctions between legal utility knives and illegal gravity knives, and the failure to supervise and/or discipline staff responsible for the unconstitutional arrests are so institutionalized as to represent a policy or custom of unconstitutional violations that have resulted in the deprivation of plaintiffs' rights.

135.    The aforementioned customs, policies, usages, practices, procedures and rules of the City of New York, the NYPD include, but are not limited to, the following unconstitutional practices:

a)    Explicitly and/or implicitly establishing a policy of falsely arresting and selectively prosecuting individuals who possess legal utility knives in order to intimidate and harass individuals who carry them;

b)    Making arrests without probable cause or any legal basis in order to promulgate the policy of selectively prosecuting individuals who possess legal utility knives;

c)    Disproportionately arresting individuals who possess legal utility knives while allowing retail and corporate interests that sell these knives to remain free from false arrest and prosecution, in violation their rights under the Equal Protection Clause;

d)    Showing deliberate indifference to whether the arrests made pursuant to that were made based on probable cause or with the proper application of the New York Penal Law;

e)    Showing deliberate indifference to the training of subordinate officers to not arrest individuals unless they are arrested upon probable cause or a

basis under the law in accordance with the proper standards under the New York Penal Law;

f)    Showing deliberate indifference to training officers as to the difference between gravity and non-gravity knives;

g)    Having no check or balance in place to verify the legality of these knives;

h)    Showing deliberate indifference to the supervision of subordinate officers in the NYPD for the arrests in determining whether the alleged "gravity knives" were legitimate;

i)    Making the aforementioned arrests notwithstanding clearly established law prohibiting them; and/or

j)    City policymakers continued constructive acquiescence to repeated and continuing constitutional violations of individuals who are being illegally arrested and prosecuted;

136.    The existence of the aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct as is the case with the two (2) plaintiffs in this matter as well as the NYPD's own statistics and statistics and reports maintained by other City Agencies.

137.    The foregoing customs, policies, usages, practices, procedures and rules of the City of New York, and NYPD constituted a deliberate indifference to the safety, well-being and constitutional rights of plaintiffs.

138.    The foregoing customs, policies, usages, practices, procedures and rules of the City of New York, and NYPD were the direct and proximate cause of the constitutional violations suffered by plaintiffs as alleged herein.

139.    The foregoing customs, policies, usages, practices, procedures and rules of the City of New York, and NYPD were the moving force behind the constitutional violations suffered by plaintiffs as alleged herein.

140.    As a result of the foregoing customs, policies, usages, practices, procedures and rules of the City of New York, and NYPD, plaintiffs were arrested without probable cause or any legal basis and in many instances were subjected to detention, search, restraints, handcuffing and verbal and mental abuse in violation of their constitutional rights.

141.    As a result of the foregoing customs, policies, usages, practices, procedures and rules of the City of New York, and NYPD, plaintiffs were caused to appear in court to be prosecuted on these unconstitutional arrests and in many instances causing them to lose time from work or school in violation of their constitutional rights.

142.    As a result of the foregoing customs, policies, usages, practices, procedures and rules of the City of New York, and NYPD, plaintiffs were targeted, stopped and unconstitutionally arrested based on an improper motivation under the Equal Protection Clause of the Fourteenth Amendment.

143.    Defendants, collectively and individually, while acting under color of state law, were directly and actively involved in violating the constitutional rights of plaintiffs.

144.    Defendants, collectively and individually, while acting under color of state law, acquiesced in and encouraged a pattern of unconstitutional conduct by subordinate NYPD officers, and were directly responsible for the violation of the constitutional rights of plaintiffs.

145.    All of the foregoing acts by defendants deprived plaintiffs of federally protected rights, including, but not limited to, the right:

ii.    Not to be deprived of liberty without due process of law;

iii.    To be free from search, seizure and arrest not based upon probable cause; and,

iv.    To receive equal protection under the law;

**WHEREFORE**, plaintiffs request the following relief jointly and severally as against all of the defendants:

1. A judgment declaring that defendants have committed the violations of law alleged in this action;

2. An order preliminarily and permanently enjoining and directing defendants to cease enforcement of this policy of making illegal arrests;

3. Directing that immediate remedial training on the proper and legal grounds for arrests be provided to all current members of the NYPD (in the Precincts and the NYPD academy);

4. Directing defendants to put in place a system for monitoring the arrests and the legal basis for them so that baseless arrests that have been made can be immediately dismissed;

5. Compensatory damages against all defendants in an amount to be proven at trial;

6. Punitive damages against all defendants, except the City, in an amount to be proven at trial;

7. An order awarding disbursements, costs, and attorneys' fees pursuant to 42 U.S.C. § 1988;

8. Such other further relief that the court may deem just and proper.

Dated: New York, New York
      April 27, 2015

BY:_____/S_____
COHEN & FITCH LLP
JOSHUA P. FITCH (JF-2813)
GERALD M. COHEN (GC-0414)
233 Broadway, Suite 1800
New York, N.Y. 10279
(212) 374-9115
jfitch@cohenfitch.com
gcohen@cohenfitch.com